394 S.E.2d 524

**BROCKWAY GLASS COMPANY, INC., GLASSWARE DIVISION, a Corporation**

v.

**Michael E. CARYL, as State Tax Commissioner of West Virginia, Successor to Herschel H. Rose, III, Former State Tax Commissioner of West Virginia.**

No. 18995.

Supreme Court of Appeals of West Virginia.

May 18, 1990.

Dissenting Opinion of Justice Brotherton July 11, 1990.

Roger W. Tompkins, Atty. Gen., John E. Shank, Deputy Atty. Gen., Charleston, for Michael E. Caryl, Comm'r.

Lisa Stout Rogers, Highland, McNeer & McMunn, Clarksburg, for Brockway Glass Co.

McHUGH, Justice:

This tax case is before this Court upon an appeal by the State Tax Department (now the State Department of Tax and Revenue) from a final order of the Circuit Court of Harrison County, West Virginia. The case involves the former business and occupation tax credit for industrial expansion, *W.Va.Code*, 11–13C–1 to 11–13C–5, as

effective prior to repeal thereof in 1985.[1] The issue is one of first impression in this jurisdiction and is whether such credit is to be prorated on a daily basis between the seller and the buyer for the year of sale of the qualified investment property, as opposed to the seller getting the entire credit for the year of sale. Agreeing with the circuit court that the seller is to get the entire credit for the year of sale, we affirm.

## I

Brockway Glass Company, Inc., through its Glassware Division ("the taxpayer"), operated a glass manufacturing plant in Clarksburg, West Virginia, until May 3, 1979, when it sold its operations to Anchor Hocking Corp. The latter continued the glass manufacturing operations throughout the remainder of the year 1979 and beyond.

The State Tax Department issued a business and occupation tax assessment against the taxpayer for the period of January 1, 1976 through May 3, 1979. The part of the assessment which is relevant in this appeal involved the business and occupation tax credit for industrial expansion for the year 1979. The taxpayer had claimed industrial expansion credit for the entire year of 1979.[2] The State Tax Department disallowed the credit for the portion of the year after the taxpayer sold the business. The amount in controversy (exclusive of interest) is $14,921.59.

On appeal by the taxpayer the Circuit Court of Harrison County ruled in favor of the taxpayer and restored the credit for the full year, limited to fifty percent of the gross amount of business and occupation tax due before calculation of the credit.

## II

The State Tax Department argues before us that the business and occupation tax credit for industrial expansion should be prorated on a daily basis between the seller and the buyer for the year of sale of the qualified investment property. The taxpayer, on the other hand, argues that, as between the seller and the buyer, the seller is entitled to the entire credit for the year of sale, while the buyer is entitled to the remaining amount of the available credit for subsequent years only. We agree with the taxpayer.

Under *W.Va.Code*, 11–13C–3(a) [1978], the amount of the business and occupation tax credit for industrial expansion is ten percent of the cost of qualified investment property, and such credit is to be applied over a ten-year period at the rate of one-tenth of the amount of such credit per taxable year. Under *W.Va.Code*, 11–13C–5 [1969], a taxpayer forfeits the unused portion of the industrial expansion credit for the taxable year in which the qualified investment property is disposed of and for all ensuing taxable years. However, under that section, property shall not be treated as disposed of by reason of a mere change in the form of conducting the business, so long as the property is retained in such business, the taxpayer or the successor retains a substantial interest therein and the taxpayer or the successor continues to qualify as an industrial taxpayer.

*W.Va.Code*, 11–13C–5 [1969] and its implementing regulations are *silent* as to whether the seller and the buyer are to share the industrial expansion credit for the year of sale, where there has been a mere change in the form of conducting the business. Similar business and occupation tax credits for industrial revitalization and for coal loading facilities explicitly provide for the *successor* business to be entitled only to the remaining amount of the available credit for each year *subsequent* to the year of sale. *See W.Va.Code*, 11–13D–7(b) [1985] and *W.Va.Code*, 11–13E–6(b) [1985].

1. The business and occupation tax credit for industrial expansion was replaced and supplemented in 1985 by various credits against various types of state taxes, as part of an overhaul of the state tax system. *See, e.g.,* current articles 13D, 13E and 13C of chapter 11 of the *W.Va.Code.*

2. Pursuant to *W.Va.Code*, 11–13C–3(b) [1978], the taxpayer limited its industrial expansion credit to fifty percent of the gross amount of business and occupation tax due before calculation of the credit.

*See also W.Va.Code,* 11–13C–9(b) [1985] (same rule for business investment and jobs expansion credit against various taxes, including business and occupation tax). This approach—a taxpayer gets the full credit for the year of sale and the successor gets the remaining amount of the available credit for each subsequent year—encourages the successor to stay in business during at least the year subsequent to the year of sale to be entitled to any of the credit. On the other hand, the State Tax Department's approach—proration of the credit for the year of sale between the seller (taxpayer) and the buyer (successor) —does not encourage the successor to stay in business the next year to obtain any of the credit. Consequently, the purpose of the industrial expansion credit statute, stated in *W.Va.Code,* 11–13C–1 [1969], specifically, encouraging the location of new industry and the expansion of existing industry within this state, thereby increasing employment, is promoted for a longer period of time by the nonproration approach urged by the taxpayer.

While not involving the precise issue involved in this case, the opinion of the Court in *Andy Bros. Tire Co. v. West Virginia State Tax Commissioner,* 160 W.Va. 144, 233 S.E.2d 134 (1977), refers to the fact that the statute on the business and occupation tax credit for industrial expansion, specifically, *W.Va.Code,* 11–13C–3(a) [1978], explicitly provides for proration of the credit over ten years at the rate of one-

tenth per year. While that proration is not in the context of a sale, it is the only proration over a period of time mentioned in the industrial expansion credit statute. Therefore, because the statute calls generally for an *annual* proration of the credit, without mentioning a daily proration in a given year, we believe the State Tax Department's interpretation in this case requiring a daily proration between the seller and the buyer for the year of sale is precluded by the rule of statutory construction known as *expressio unius est exclusio alterius* (the expression of one thing implies the exclusion of other things not expressed). *See, e.g., Dotts v. Taressa J.A.,* 182 W.Va. 586, 591, 390 S.E.2d 568, 573 (1990); *Concerned Loved Ones & Lot Owners Association v. Pence,* 181 W.Va. 649, 653, 383 S.E.2d 831, 835 (1989); *Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 263, 382 S.E.2d 313, 316 (1989); *McGlone v. Superior Trucking Co.,* 178 W.Va. 659, 663, 363 S.E.2d 736, 740 (1987); syl. pt. 3, *Manchin v. Dunfee,* 174 W.Va. 532, 327 S.E.2d 710 (1984); *Douglass v. Koontz,* 137 W.Va. 345, 361, 71 S.E.2d 319, 328 (1952) (business and occupation tax case).[3]

*Andy Bros. Tire* concludes that the industrial expansion credit against the business and occupation tax, as a species of socioeconomic legislation, is to be liberally construed in favor of the taxpayer. 160 W.Va. at 147, 233 S.E.2d at 136. For this reason this case is materially distinguishable from *Pennsylvania & West Virginia*

---

**3.** Where the legislature intended for there to be a proration or an apportionment under the industrial expansion credit statute, it expressly so provided. *See W.Va.Code,* 11–13C–4(e) [1969] (where property is purchased for multiple business uses, including use as qualified investment of an industrial taxpayer as well as nonqualifying uses, the cost of the property must be apportioned so that only the appropriate portion of the cost is considered to be qualified investment property).

Similarly, the legislature has expressly provided for proration of the annual business and occupation tax *exemption,* based upon the fractional part of the year for which the business was conducted. *W.Va.Code,* 11–13–3 [1978] (the 1983 amendment thereto is not relevant).

The State Tax Department points to the language in *W.Va.Code,* 11–13–4(a)-(b) [1978, 1988] requiring *monthly* or *quarterly* proration of

"any applicable tax credits allowable for the taxable year" when making monthly or quarterly *estimated* payments of the business and occupation tax. This statute does not support the State Tax Department's argument for daily proration of the business and occupation tax credit for industrial expansion between the seller and the buyer for the year of sale of qualified investment property. The issue here is whether the industrial expansion credit "allowable for the taxable year" must be prorated on a daily basis for the year of sale. While *W.Va.Code,* 11–13–3 [1978] explicitly provides for proration of the annual business and occupation tax *exemption,* based upon the fractional part of the year for which the business was conducted, *W.Va.Code,* 11–13C–5 [1969], on the other hand, does *not* prorate the industrial expansion *credit,* based upon the fractional part of the year for which the business was conducted by the taxpayer.

*Supply Corp. v. Rose,* 179 W.Va. 317, 368 S.E.2d 101 (1988). That case involved a use tax exemption for purchases used in a retail sales business. The exemption did not apply to purchases used in a wholesale sales business. The statute was silent as to whether a taxpayer, like the taxpayer in that case, who engaged in both retail and wholesale sales businesses was required to apportion the use tax exemption, based upon the percentage of total sales attributable to retail transactions. In syllabus point 6 this Court held that such apportionment was required. We applied the rule of statutory construction that an exemption statute is construed strictly against the taxpayer. Syl. pt. 5. In the present case, however, a tax credit, not a tax exemption, statute is involved, and *Andy Bros. Tire* is authority for liberally construing tax credit legislation in favor of the taxpayer.

In addition, the legislature has prevented a "windfall" to the seller of qualified investment property for the "short" year of sale. *W. Va. Code,* 11–13C–3(b) [1978] limits the amount of business and occupation tax credit for industrial expansion to fifty percent of the business and occupation tax due in the absence of such credit and before application of the annual exemption. The amount of business and occupation tax due would be lower automatically for the "short" year of sale than for a full year of business. Application of this limitation in this case resulted in the taxpayer not being allowed to utilize the full amount of credit for the "short" year of sale.

For the reasons stated above, this Court holds that under *W. Va. Code,* 11–13C–5 [1969], a taxpayer who sells qualified investment property is entitled to the former business and occupation tax credit for industrial expansion for the year of sale, and the successor who continues to operate the business is entitled only to the remaining amount of the available credit for each year subsequent to the year of sale.

Accordingly, the final order of the Circuit Court of Harrison County is affirmed.

Affirmed.

BROTHERTON, J., dissents and reserves the right to file a dissenting opinion.

BROTHERTON, Justice dissenting:

I dissent to the majority opinion because for some reason they take a simple set of facts and reach an illogical, albeit creative, conclusion which is contrary to both the State Constitution and our State statutes relating to industrial expansion tax credit. The majority opinion affirms the circuit court's verdict allowing the plaintiff taxpayer a full year expansion tax credit against the taxpayer's business and occupation liability for that part of the fiscal year it was actually doing business, even though the plaintiff sold the business before the end of the tax year. In reaching their decision, the majority relies on what it perceives to be the intent of the legislature as the rationale for its result. However, it was not necessary to guess the legislature's intent, since the statutory purpose is plainly set forth in the Code sections dealing with industrial expansion credits.

Article X, § 1 of the West Virginia Constitution provides that all taxation shall be equal and uniform. Taxes are assessed during a designated period of time in which the taxpayer is receiving monies for the endeavor he is undertaking. When that business ceases, the taxpayer files a tax return for the period dating from the last tax return and the date the taxpayer ceased business. In this case, the taxpayer transferred the ownership of his business to a successor, yet sought to take a full year's industrial expansion credit pursuant to W.Va.Code § 11–13C–5 against his business and occupation liability for that part of the year he actually engaged in business. The defendant State Tax Commissioner argued the W.Va.Code required the tax credit to be prorated against the business and occupation tax for the period during which the plaintiff actually did business during the tax year. Instead, the majority found that not only did the legislative intent not allow proration, but it prevented the purchaser from receiving any of the remaining industrial credit for one year after the transfer of the business.

The majority's reliance on these theories is incorrect. The business and occupation

tax is based on business done in any one quarter of a tax year and a final return at the end of the tax year. In enacting W.Va. Code § 11–13C–5, the legislature clearly gave no thought to potential windfalls, given the knowledge that taxes are paid as the work is performed and do not carry over to a period after the business has ceased. The legislature most certainly expected the tax credit to be prorated.

The majority claims W.Va.Code § 11–13C–5 (1978) was silent as to proration. I disagree. The legislative intent for proration of the tax credit is evidenced by the two sections of the Code dealing with the tax credit—W.Va.Code §§ 11–13C–3 and 11–13C–5. West Virginia Code § 11–13C–3 provides that the expansion tax credit shall be applied over a ten-year period to reduce the business and occupation tax owed, not to exceed 50% of said business and occupation tax in any one tax year. West Virginia Code § 11–13C–5 states that if, during any year in which the tax credit is allowed, the business ceases to be used as a qualified business, the unused portion of such credit shall be forfeited for the taxable year in which such event occurs and for all ensuing taxable years. Further, it also provides that the successor purchaser continuing the qualified business may use the remaining tax credit. How can the legislative intent to prorate the tax credit be more explicit than the language found in W.Va.Code § 11–13C–5—"the *unused portion* of such tax credit shall be forfeited for the taxable year"?

If the purchaser (successor) retains the new employees, under the majority opinion he gets not a "windfall", but a "short fall" because he must wait a full year to use the remaining tax credit, while the seller may have used up a portion of the credit without even having the expense of the payroll of the new workers after he ceased doing business, while getting a full year's tax credit if he can meet the requirements. Why was it necessary to confuse a plain legislative enactment?