464 S.E.2d 763

**STATE of West Virginia ex rel. Wanda Sue RIFFLE and Edward Riffle, Relators**

v.

**Honorable Lyne RANSON, Judge of the Circuit Court of Kanawha County; Gretchen Lewis, Secretary, Department of Health and Human Resources; James Turner; John Riffle; and Ramsay Health Care, Inc., Respondents**

No. 22961.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 1995.

Decided Oct. 27, 1995.

Jack S. Kaplan and Allan N. Karlan, Morgantown, for Relators.

Bryan R. Cokeley and Jan L. Fox, Steptoe & Johnson, Charleston, for Respondents Gretchen Lewis and James Turner.

CLECKLEY, Justice:

█ In this original proceeding for a writ of prohibition, we are asked to answer the question left unresolved in *State ex rel. Smith v. Maynard*, 193 W.Va. 1, 454 S.E.2d 46 (1994); namely, whether the 1986 revisions to W.Va.Code, 56–1–1(b) (1986),[1] preclude other discretionary transfers of venue not explicitly authorized by the statute. We hold that W.Va.Code, 56–1–1(b), is the exclusive authority for a discretionary transfer or change of venue and any other transfer or change of venue from one county to another within West Virginia that is not explicitly permitted by the statute is impermissible and forbidden.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In June of 1994, Wanda Sue Riffle, one of the plaintiffs below and relators herein, filed suit in the Circuit Court of Kanawha County alleging she was the victim of sexual harassment while employed at William R. Sharpe, Jr., Hospital, the successor to the Weston State Hospital. The suit alleged violations of the West Virginia Human Rights Act, along with claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and assault and battery. Mrs. Riffle's husband, Edward Riffle, brought a loss of consortium claim. Two employees at the hospital, including Mrs. Riffle's supervisor, James Turner, were named as defendants, along with Gretchen Lewis, individually and in her capacity as Secretary of the Department of Health and Human Resources of the State of West Virginia, and Ramsay Health Care, Inc.

In August of 1994, the defendants Gretchen Lewis and James Turner filed a motion to transfer the case from Kanawha County to Lewis County based on W.Va.Code, 56–9–1 (1939),[2] and the doctrine of *forum non conveniens.* On October 31, 1994, a hearing was held on the motion to transfer. The defendants argued that for convenience in litigation the case should be transferred to Lewis County as that is the county in which the plaintiffs reside, the hospital is located, and the majority of witnesses to be called for trial reside. The defendants argued that the only connection to Kanawha County is the fact Gretchen Lewis resides in that county. Otherwise, the entire case concerns events occurring in Lewis County.

---

1. W.Va.Code, 56–1–1(b), provides:

"Whenever a civil action or proceeding is brought in the county wherein the cause of action arose, under the provisions of subsection (a) of this section, if no defendant resides in such county, a defendant to the action or proceeding may move the court before which the action is pending for a change of venue to a county wherein one or more of the defendants resides, and upon a showing by the moving defendant that the county to which the proposed change of venue would be made would better afford convenience to the parties litigant and the witnesses likely to be called, and if the ends of justice would be better served by such change of venue, the court may grant such motion."

2. W.Va.Code, 56–9–1, states:

"A circuit court, or any court of limited jurisdiction established pursuant to the provisions of section 1, article VIII of the Constitution of this State, wherein an action, suit, motion or other civil proceeding is pending, or the judge thereof in vacation, may on the motion of any party, after ten days' notice to the adverse party or his attorney, and for good cause shown, order such action, suit, motion or other civil proceeding to be removed, if pending in a circuit court, to any other circuit court, and if pending in any court of limited jurisdiction hereinbefore mentioned to the circuit court of that county: Provided, that the judge of such other circuit court in a case of removal from one circuit to another may decline to hear said cause, if, in his opinion, the demands and requirements of his office render it improper or inconvenient for him to do so."

At the hearing, the plaintiffs responded that venue was appropriate in this case as one of the defendants resides in Kanawha County.[3] Furthermore, they argued that preference should be given to their choice of county in which to file the case and that the defendants failed to overcome the presumption that the case should remain in Kanawha County. They argued the hospital is under the control of the Department of Health and Human Resources, certain witnesses are located in Kanawha County, and documents relied upon to answer certain interrogatories were obtained in Kanawha County. Finally, it was argued that due to the sensitive nature of the sexual harassment allegations, Mrs. Riffle would prefer not to testify in her home county.

After reviewing the briefs of the parties and hearing oral arguments on this issue, the circuit court ruled from the bench that the case should be transferred from Kanawha County to Lewis County. The circuit court specifically found that, notwithstanding the fact the Circuit Court of Kanawha County had venue to hear the case, "the most convenient and the most appropriate forum is Lewis County."

## II.

## DISCUSSION

### A.

*Jurisdiction and Standard of Review*

■ The authority of this Court to entertain a writ of prohibition under its original jurisdiction is well defined. *See State ex rel. Smith v. Maynard, supra; Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979). Unquestionably, in the absence of explicit statutory authority, the decision of a circuit court to transfer an action properly filed in its court to another judicial circuit is of considerable importance to the judicial system of West Virginia and has the potential of placing a "litigant at an unwarranted disadvantage in a pending action." *State ex rel. John Doe v. Troisi*, 194 W.Va. 28, 32, 459 S.E.2d 139, 143 (1995). Considering the inadequacy of the relief permitted by appeal, we believe this issue should be settled in this original action if it is to be settled at all. In recent times in every case that has had a substantial legal issue regarding venue, we have recognized the importance of resolving the issue in an original action. Accordingly, we find the exercise of original jurisdiction is appropriate under these extraordinary circumstances.

■ The normal deference accorded to a circuit court's decision to transfer a case, Syl. pt. 3, *Cannelton Industries, Inc. v. Aetna Casualty & Surety Co.*, 194 W.Va. 186, 460 S.E.2d 1 (1994) ("[a] circuit court's decision to invoke the doctrine of *forum non conveniens* will not be reversed unless it is found that the circuit court abused its discretion"), does not apply where the law is misapplied or where the decision to transfer hinges on an interpretation of a controlling statute. *See Mildred L.M. v. John O.F.*, 192 W.Va. 345, 350, 452 S.E.2d 436, 441 (1994) ("[t]his Court reviews questions of statutory interpretation *de novo* "). Under these circumstances, our review is plenary.

### B.

*Decision to Transfer*

■ The relators, perhaps out of caution, frame the issue as one of abuse of discretion.[4] We decline to adopt this formulation of the issue. In the first place, the

---

3. W.Va.Code, 56–1–1(a) (1986), states, in part:
"Any civil action or other proceeding, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:
"(1) Wherein any of the defendants may reside or the cause of action arose, except that an action of ejectment or unlawful detainer must be brought in the county wherein the land sought to be recovered or some part thereof, is[.]"

4. The caution by the parties is understandable considering our cases have not provided any clear guidance as to when the doctrine of *forum non conveniens* is applicable. We will attempt in this case to place this doctrine in its appropriate context. In West Virginia, there are two statutes authorizing intercircuit transfers. They are W.Va.Code, 56–1–1, and W.Va.Code, 56–9–1. Only the former is concerned with *forum non conveniens*. On the other hand, the provisions of W.Va.Code, 56–9–1, are triggered only when the moving party can demonstrate *good cause* justifying the transfer. This distinction is made clearer by reference to Rule 21 of the Federal Rules of Criminal Procedure:

correct approach to any statutory construction issue after the Legislature adopts explicit limitations to a preexisting common law rule must be to decide initially whether the Legislature preempted the field and thereby left any room for judicial discretion. Secondly, and a somewhat similar consideration, is the question of this Court's or the lower court's authority to expand and broaden the scope of a statute that our Legislature has explicitly limited.

■ Because of the way the issues were formulated, the parties attach great significance to the scope and breadth of a circuit court's discretion under our case law. For instance, the relators strenuously argue that because *State ex rel. Smith v. Maynard, supra,* is not directly applicable to this case, "Kanawha County is a county of preference under W.Va. § 14–2–2. Therefore, the case must be evaluated under traditional law of *forum non conveniens.*" Under the traditional doctrine of *forum non conveniens,* the relators claim the circuit court abused its discretion. The respondents maintain with equal vigor that the circuit court has not abused its discretion. These arguments, in

---

"**Transfer from the District for Trial.** (a) *For Prejudice in the District.* The court upon motion of the defendant shall transfer the proceeding as to that defendant to another district whether or not such district is specified in the defendant's motion if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district.

"(b) *Transfer in Other Cases.* For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district."

Rule 21(a) is similar to W.Va.Code, 56–9–1. It may be invoked successfully only when the circuit court is persuaded that the prejudice is such that unless abated will deprive the parties of a fair trial. Historically, *good cause* in the context of this statute means the moving party must demonstrate prejudice. *See Pittsburgh, Wheeling & Ky. R. Co. v. Applegate & Son,* 21 W.Va. 172 (1882). The *good cause* referred to in this section applies to situations where the judge is disqualified, *see Forest Coal Co. v. Doolittle,* 54 W.Va. 210, 46 S.E. 238 (1903); where an uninterested and unbiased jury cannot be found in the circuit where the suit was originally filed, *see Ingersoll v. Wilson,* 2 W.Va. 59 (1867); or where the clerk of the court is a party litigant. *See Hunter v. Beckley Newspapers Corp.,* 129 W.Va. 302, 40 S.E.2d 332 (1946).

Although some of our cases inartfully refer to W.Va.Code, 56–9–1, as a *forum non conveniens* statute, *see Norfolk and Western Ry. Co. v. Tsapis,* 184 W.Va. 231, 236, 400 S.E.2d 239, 244 (1990) ("[w]e also recognize that W.Va.Code, 56–9–1 (1939), which provides a mechanism for transfer of cases within the circuit courts of this State, operates as an intercircuit *forum non conveniens*"), our recent interpretation of W.Va.Code, 56–1–1, *sub silentio* overruled those cases. We stated in *State ex rel. Smith v. Maynard,* 193 W.Va. at 5–6, 454 S.E.2d at 50–51:

"In deciding this matter, it is essential to distinguish between W.Va.Code, 56–9–1, and W.Va.Code, 56–1–1(b). W.Va.Code, 56–9–1, is a general provision for transferring cases from one circuit court to another circuit court. On the other hand, W.Va.Code, 56–1–1, is a general venue statute." (Footnote omitted).

More importantly, transfers under W.Va.Code, 56–9–1, are not automatic. In referring to W.Va. Code, 56–9–1, this Court stated:

"[T]his procedure *is not automatic and is subject* to the approval of the chief justice of this Court who, by virtue of Article VIII, Section 3 of the West Virginia Constitution, serves as 'the administrative head of all courts.' Moreover, this same section enables the chief justice to assign a judge 'from one circuit to another,' so that it may be more expeditious to bring in a judge rather than transfer the case to another circuit." *Norfolk and Western Ry. Co. v. Tsapis,* 184 W.Va. at 236, 400 S.E.2d at 244.

The issue *sub judice* is not one under the *good cause* provision of W.Va.Code, 56–9–1, but is one concerning the most convenient venue to try this action. Even if we believed there was conflict between the statutes, we would resolve such tension in favor of the more recent and specific statute. *See State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268 (1983).

The parties place too much emphasis on W.Va. Code, 56–9–1, as an independent statutory source for a transfer to another circuit based upon the convenience of the parties and the witnesses. In our judgment, this section is not applicable to the discretionary intercircuit transfers discussed in W.Va.Code, 56–1–1(b). More importantly, the circuit court did not rely upon this section in making its ruling. The order entered by the circuit court did not mention *good cause* within the contemplation of W.Va.Code, 56–9–1. Rather, the order transferred the case due to the convenience of the parties. Furthermore, the appropriate procedures were not invoked to effectuate a transfer under W.Va.Code, 56–9–1. Finally, today's holding makes clear that W.Va.Code, 56–1–1(b), is the exclusive authority for a *forum non conveniens* intercircuit transfer. W.Va.Code, 56–1–1(b), is analogous to Rule 21(b) cited above.

our judgment, deflect attention from the more important question presented by the circuit court's ruling. Succinctly stated, we must squarely decide whether W.Va.Code, 56–1–1(b), superseded and rendered inapplicable the doctrine of *forum non conveniens* as previously defined.[5]

To be clear, the West Virginia Legislature is the paramount authority for deciding and resolving policy issues pertaining to venue matters.[6] Once the Legislature indicates its preference by the enactment of a statute, the Court's role is limited. Our duty is to interpret the statute, not to expand or enlarge upon it. *State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 23–24, 454 S.E.2d 65, 68–69 (1994). More significantly, any subsequent policy changes must come from the Legislature itself and, in the absence of constitutional or statutory authority to the contrary, this Court has no blanket power to recast the statute to meet its fancy. *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

It has been emphasized repeatedly that "the starting point in every case involving construction of a statute is the language of the statute itself." *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692, 697 (1985). W.Va. Code, 56–1–1(b), provides as follows:

"Whenever a civil action or proceeding is brought in the county wherein the cause of action arose, under the provisions of subsection (a) of this section, if no defendant resides in such county, a defendant to the action or proceeding may move the court before which the action is pending for a change of venue to a county wherein one or more of the defendants resides, and upon a showing by the moving defendant that the county to which the proposed change of venue would be made would better afford convenience to the parties litigant and the witnesses likely to be called, and if the ends of justice would be better served by such change of venue, the court may grant such motion."

By its terms, this statute indicates the procedural area in which this new revision is to have effect, that being, intra-State venue disputes.[7] As many courts have done in the past, because this statute appears to abrogate our recently developed common law rule in the area of *forum non conveniens*, our initial task is to analyze with care this legislative enactment to determine what impact this revision has to factual situations such as are presented in this case. In *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 392, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339, 352 (1970), the United States Supreme Court made the following observations:

"In many cases the scope of a statute may reflect nothing more than the dimensions of the particular problem that came to the attention of the legislature, inviting the conclusion that the legislative policy is equally applicable to other situations in which the mischief is identical. . . . On the other hand, the legislature may, in order to promote other, conflicting interests, prescribe with particularity the compass of the legislative aim, erecting a strong inference that territories beyond the bound-

---

5. In *American Dredging Co. v. Miller*, 510 U.S. 443, ——, 114 S.Ct. 981, 988, 127 L.Ed.2d 285, 296 (1994), the United States Supreme Court gave the doctrine an acceptable definition:

"At bottom, the doctrine of *forum non conveniens* is nothing more or less than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined. But venue is a matter that goes to process rather than substantive rights—determining which among various competent courts will decide the case."

In Syllabus Point 1 of *Cannelton Industries, Inc. v. Aetna Casualty & Surety Co., supra,* we stated:

" 'The common law doctrine of *forum non conveniens* is simply that a court may, in its sound discretion, decline to exercise jurisdiction to promote the convenience of witnesses and the ends of justice, even when jurisdiction and venue are authorized by the letter of a statute.' Syllabus point 1, *Norfolk & Western Railway Co. v. Tsapis*, 184 W.Va. 231, 400 S.E.2d 239 (1990)."

6. The parties do not challenge the constitutionality of the revised venue statutes nor do they challenge our Legislature's authority to change the common law.

7. The venue statutes affected by the 1986 revisions all deal with venue choices within West Virginia. Therefore, we believe the 1986 revisions do not apply to interstate transfers.

aries so drawn are not to feel the impact of the new legislative dispensation."

In *State ex rel. Smith v. Maynard, supra,* we addressed what effect the 1986 revisions contained within W.Va.Code, 56–1–1(b), had upon our common law doctrine of *forum non conveniens:* [8]

"We believe it is necessary to answer the question whether a circuit court should exercise its discretion to transfer cases in light of our decisions interpreting W.Va. Code, 56–9–1, or whether W.Va.Code, 56–1–1(b), has superseded and removed those cases as guiding precedents. We hold that W.Va.Code, 56–1–1(b), exclusively controls a transfer decision where its prerequisites have been met; namely, the forum selected is where the cause of action arose, and the defendant resides in another county and requests the case be transferred to that county. In other words, where W.Va. Code, 56–1–1(b), applies, its explicit provisions render inapplicable the doctrine of *forum non conveniens.* As a consequence, to the extent that the West Virginia doctrine of *forum non conveniens* has survived this new statutory enactment, it applies only where W.Va.Code, 56–1–1(b), does not apply." 193 W.Va. at 7, 454 S.E.2d at 52.

■ Both sides to this appeal acknowledge the specific question we must answer was deliberately left unresolved in *Maynard.* Today, we address that issue. It is clear to us that when the West Virginia Legislature adopted W.Va.Code, 56–1–1(b), it intended to do more than codify our existing decisional law on *forum non conveniens.* When the Legislature places strict limits on the appli-

cation of an old legal doctrine, it is in a revisionary mode. Indeed, the plain language of the statute indicates the Legislature "was revising as well as codifying." *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789, 793 (1955). Again, in *Maynard,* we stated:

"W.Va.Code, 56–1–1, was enacted after our decision in *Hinkle,* 164 W.Va. 112, 262 S.E.2d 744 (1979). Without giving 28 U.S.C. § 1404 the analysis we give it in this opinion, we adopted the doctrine of *forum non conveniens* in note 13 of *Hinkle,* 164 W.Va. at 124, 262 S.E.2d at 751. We may 'assume that our elected representatives ... know the law.' *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560, 575–76 (1979). Thus, it is logical that the West Virginia legislature was fully aware of this Court's formulation of the *forum non conveniens* doctrine and, in its wisdom, chose to revise it." 193 W.Va. at 8, 454 S.E.2d at 53. (Footnote omitted).

■ Our law of *forum non conveniens* was broad and permitted circuit courts enormous discretion in its application.[9] It may well be that the Legislature believed the discretion was too broad and that it licensed circuit courts to "set adrift on an uncharted sea, to order transfers according to their personal notions of justice." *Norwood,* 349 U.S. at 34, 75 S.Ct. at 548, 99 L.Ed. at 794. (Clark, J., dissenting). We do not believe it is unreasonable for the West Virginia Legislature to have found that the doctrine of *forum non conveniens,* as developed by our decisions, swept more broadly than its justification.[10] It must be underscored that it has

---

8. The full import of today's decision can more readily be appreciated when this decision and the decision in *Maynard* are read together. In *Maynard,* we gave an analysis not only of the doctrine of *forum non conveniens,* but we also discussed its historical development in West Virginia. Of some significance, we noted in *Maynard* that at least in West Virginia the doctrine originated not as part of our organic laws, but as a result of note 13 in *Hinkle v. Black,* 164 W.Va. at 124, 262 S.E.2d at 751. After *Hinkle,* we continued to add parameters to the doctrine in *Cannelton Industries, Inc. v. Aetna Casualty & Surety Co., supra; Norfolk & Western Railway Co. v. Tsapis, supra.*

9. Before the 1986 revisions, our application of the doctrine of *forum non conveniens* struck directly at venue choices authorized by the Legislature. In other words, it gave the circuit courts authority to disregard the venue statutes that limited venue to certain counties and permitted transfers to another county based upon the circuit court's determination that it would be more convenient and just to transfer the case.

10. "Where as here, there are plausible reasons for ... [legislative] action, our inquiry is at an end. It is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay[s] the legislative decision,' *Flemming v. Nestor,* [363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d

been the policy in this State and country that, unless a statute provided otherwise, the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947). We need not pronounce a verdict on whether the doctrine of *forum non conveniens*, as developed by this Court, was a wise extrapolation of decisional law then in existence. A development of major significance has intervened making it clear that the Legislature not only changed the landscape of *forum non conveniens*, but it did more: it limited its application to a fact-specific situation. Considering the specific language of the statute, we do not believe the Legislature intended that the old doctrine was to continue.[11] It has been a mainstay of Anglo-American jurisprudence that the common law gives way to a specific statute that is inconsistent with it; when a statute is designed as a revision of a whole body of law applicable to a given subject, it supersedes the common law. William N. Eskridge, Jr., & Phillip P. Frickey, *Cases and Materials On Legislation: Statutes And The Creation of the Public Policy* 690 (1988). In our view, the enactment of W.Va.Code, 56–1–1(b), represents the wholesale abandonment of the doctrine of *forum non conveniens* in all areas of intra-State transfers, quite evidently prompted by the sense of overbroad judicial discretion in its application.

■■■ W.Va.Code, 56–1–1(b), has no language whatsoever permitting transfers of the type granted by the circuit court. *Expressio unius est exclusio alterius* (express mention of one thing implies exclusion of all others) is a well-accepted canon of statutory construction. *Brockway Glass Co. Inc., Glassware Div. v. Caryl*, 183 W.Va. 122, 394 S.E.2d 524 (1990); *Dotts v. Taressa J.A.*, 182 W.Va. 586, 591, 390 S.E.2d 568, 573 (1990); *McGlone v. Superior Trucking Co., Inc.*, 178 W.Va. 659, 663, 363 S.E.2d 736, 740 (1987). If the Legislature explicitly limits application

of a doctrine or rule to one specific factual situation and omits to apply the doctrine to any other situation, courts should assume the omission was intentional; courts should infer the Legislature intended the limited rule would not apply to any other situation. Hence, a statute which specifically provides that a thing is to be done in a particular manner, normally implies that it shall not be done in any other manner. *See* 73 Am. Jur.2d *Statutes* § 211 (1974). "This canon is a product of logic and common sense, and it has special force when the statutory scheme is carefully drafted." *State v. Sugg*, 193 W.Va. 388, 401 n. 14, 456 S.E.2d 469, 482 n. 14 (1995). The parties do not question nor discuss the quality of the statute, and we expressly find that our venue statutes are carefully sculpted and are the product of a legislative process culminating with the 1986 revisions.

■■■ In addition to application of the *expressio unius est exclusio alterius* rule of statutory construction, we find our conclusion that the Legislature intended to exclude and abolish all other intra-State applications of the doctrine of *forum non conveniens* not expressly codified is compelled by both reason and common sense. To conclude otherwise would mean the Legislature did a useless act. Prior to the 1986 revisions, our common law doctrine of *forum non conveniens* permitted a circuit court to do exactly what the Legislature provided in the revisions. To suggest that the Legislature only wanted to continue to give circuit courts explicit discretion in this specific area, when that authority already existed under common law, would undermine the wisdom of the Legislature in determining policy matters. The 1986 revisions limited as well as authorized judicial discretion in this area. To be clear, the argument that the doctrine of *forum non conveniens* is helpful in the administration of justice in this State has force, but it is properly addressed to the West Virginia

---

1435, 1445 (1960)], because this Court has never insisted that a legislative body articulate its reasons for enacting a statute. This is particularly true where the legislature must necessarily engage in a process of line-drawing." *U.S.R.R. v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368, 378 (1980).

**11.** To exhaust the issue, we further find that unless directed otherwise by statute, the doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is in another state.

Legislature and not to this Court. *See State v. Evans,* 170 W.Va. 3, 5, 287 S.E.2d 922, 924 (1982) ("[s]hould 'reason and experience' dictate a change in that statute, it is up to our legislature to draft and pass appropriate modifications"). If we have erred in our construction of this statute, the Legislature may and should reassert its will.

To recapitulate, we hold that W.Va.Code, 56–1–1(b), is the exclusive authority for a discretionary transfer or change of venue and any other transfer or change of venue from one county to another within West Virginia that is not explicitly permitted by the statute is impermissible and forbidden. Therefore, the writ of prohibition is granted.

Writ granted.