IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

FILED

**April 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0899

_____

THORNHILL MOTOR CAR, INC. d/b/a
THORNHILL CHRYSLER DODGE JEEP RAM,
Petitioners,

v.

THE HONORABLE MIKI THOMPSON,
Judge of the 30th Judicial Circuit, and
MOORE CHRYSLER, INC.
Respondents.

_____

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

_____

Submitted: April 5, 2022
Filed: April 26, 2022

Johnnie E. Brown, Esq.                    Charles R. Bailey, Esq.
Donovan M. Powell, Esq.              John P. Fuller, Esq.
Pullin, Fowler, Flanagan,                 Bailey & Wyant, PLLC
Brown & Poe, PLLC                       Counsel for Respondent
Counsel for Petitioner

JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE ALAN D. MOATS, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.     "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers.  W. Va. Code § 53-1-1"  Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2.     "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

**WOOTON, Justice:**

The petitioner, Thornhill Motor Care, Inc., d/b/a Thornhill Chrysler Dodge Jeep Ram ("Thornhill"), seeks relief from the June 29, 2021, order prohibiting the Circuit Court of Mingo County from enforcing its order denying the petitioner's motion to dismiss based on improper venue. Thornhill asserts that the proper venue for a lawsuit brought against it by another new motor vehicle dealer, the respondent, Moore Chrysler, Inc. ("Moore"), is in Logan County pursuant to the general venue statute, West Virginia Code § 56-1-1 (2020). The circuit court found that the proper venue for the action was in Mingo County, basing its ruling upon a specific venue statute, West Virginia Code § 17A-6A-12(3) (2021), which governs declaratory judgment actions by new motor vehicle dealers against manufacturers or distributors.

After careful review of the parties' arguments, the record before us, and the applicable law, we conclude that the circuit court committed a clear legal error in applying the specific venue statute, § 17A-6A-12(3), rather than the general venue statute, § 56-1-1. We therefore grant the writ of prohibition and remand this case to the circuit court for entry of an order transferring this action to the Circuit Court of Logan County.[1]

---

[1] *See generally* W. Va. Code § 56-1-1 (b) ("Whenever a civil action or proceeding is brought in the county where the cause of action arose under the provisions of subsection (a) of this section, if no defendant resides in the county, a defendant to the action or proceeding may move the court before which the action is pending for a change of venue to a county where one or more of the defendants resides and upon a showing by the moving

1

## I. Facts and Procedural Background

On February 18, 2021, Moore filed a lawsuit against Thornhill in Mingo County, West Virginia, which included a verified complaint asserting various causes of action,[2] a motion for both temporary and permanent injunctive relief, and a declaratory judgment action – all predicated upon violations of West Virginia Code §§ 17A-6A-1 to -18 (2021), entitled "Motor Vehicle Dealers, Distributors, Wholesalers and Manufacturers."[3] Specifically, Moore alleged that it operates its "established place of business" in Williamson, Mingo County, West Virginia, where it sells Fiat Chrysler ("Fiat") automobiles, "including vehicles market[ed] under the brands Chrysler, Dodge, Jeep, and Ram [('CDJR')][.]" Moore further alleged that Thornhill's "principal office" is located on Dingess Street in Logan, Logan County, West Virginia, along with three other properties which, Moore alleged, Thornhill uses, or has used, to sell Fiat automobiles.

---

defendant that the county to which the proposed change of venue would be made would better afford convenience to the parties litigant and the witnesses likely to be called, and if the ends of justice would be better served by the change of venue, the court may grant the motion, allowing for the action either to be dismissed for improper venue, without prejudice, or, alternatively, to transfer venue to county where venue is proper"); see Syl. Pt. 1, in part, *State ex rel. Riffle v. Ranson*, 195 W. Va. 121, 464 S.E.2d 763 (1995) (providing that "W. Va. Code, 56-1-1(b) (1986), is the exclusive authority for a discretionary transfer or change of venue . . . .").

[2] Moore alleged constructive fraud, tortious interference, as well as violations of the statutory scheme referenced *infra,* and sought punitive damages.

[3] During the 2022 Regular Session, the Legislature amended and clarified provisions contained within this statutory scheme. *See* Enrolled Comm. Sub. H. B. 4560, 2022 Reg. Sess. However, the amended versions of the statutes do not take effect until June 10, 2022, and therefore have no impact on this decision.

According to Moore's allegations, "[i]n approximately 2018, representatives of Fiat . . . approached Moore . . . and requested that Moore . . . waive its rights under West Virginia Code § 17A-6A-3 and agree to Fiat . . . permitting another CDJR dealership being placed in the 'relevant market area' as defined by West Virginia Code § 17A-6A-3(14)."[4] The CDJR dealership was to be located at Fountain Place Mall in Logan, West Virginia, which Moore alleged was located within its "relevant market area." Moore alleged it refused to waive its right and refused to allow a "'new' CDJR dealership within the statutory 'relevant market area.'" Thereafter, Moore avers that Fiat informed it that "Thornhill CDJR would be given a dealership. . . ."

Moore also alleged that the notice provision of section 17A-6A-12(2)[5] was violated when Fiat gave the Thornhill CDJR dealership "permission to relocate mobile home sales office to the Fountain Place Mall" without giving Moore statutory notice.

---

[4] A "relevant market area" is defined as

> the area located within a twenty-air mile radius around an existing same line-make new motor vehicle dealership: *Provided*, That a fifteen-mile relevant market area as it existed prior to the effective date of this statute shall apply to any proposed new motor vehicle dealership as to which a manufacturer or distributor and the proposed new motor vehicle dealer have executed on or before the effective date of this statute a written agreement, including a letter of intent, performance agreement or commitment letter, concerning the establishment of the proposed new motor vehicle dealership.

W. Va. Code § 17A-6A-3(14).

[5] West Virginia Code § 17A-6A-12(2) (discussed *infra* in greater detail).

3

Moore further averred that Thornhill was running its business out of a "mobile home" located on Stratton Street in Logan, "with the ultimate goal to call the rues [sic] dealership location an 'established business' for the express purpose of then utilizing" the provisions of section 17A-6A-12 "to tow the mobile home sales office to Fountain Place Mall and begin selling CDJR vehicles within the statutorily protected 'relevant market area'" of Moore. Moore averred that Thornhill's office was not an "established place of business" as defined in West Virginia Code § 17A-6A-3(4).[6]

On March 18, 2021, Thornhill moved to dismiss Moore's complaint pursuant to West Virginia Rule of Civil Procedure 12(b)(3) on the basis of improper venue. After a hearing, the circuit court denied the motion by an order entered on June 29, 2021.[7] The

---

[6] An "established place of business" is defined as

> a permanent, enclosed commercial building located within this state easily accessible and open to the public at all reasonable times and at which the business of a new motor vehicle dealer, including the display and repair of motor vehicles, may be lawfully carried on in accordance with the terms of all applicable building codes, zoning and other land-use regulatory ordinances and as licensed by the Division of Motor Vehicles.

Id. § 17A-6A-3(4).

[7] On July 12, 2021, Thornhill filed a "Motion to Refer to Business Court Division," and then sought a protective order seeking to "stay the response time" for Moore's first set of discovery until its request for referral to the business court was ruled on by the Chief Justice of this Court. On August 30, 2021, the circuit court granted the requested stay. On October 22, 2021, the requested referral to the business court was denied and on November 3, 2021, the petition for writ of prohibition was filed.

4

court determined that the specific venue statute, § 17A-6A-12(3), took precedence over the general statute, § 56-1-1. Thornhill pursued extraordinary relief by filing a writ of prohibition with this Court. [8]

## II. Standard of Review

In deciding whether to grant relief in prohibition, we are mindful that "[a]s an extraordinary remedy, this Court reserves the granting of such relief to 'really extraordinary causes.'" *State ex rel. Am. Elec. Power Co., Inc. v. Nibert*, 237 W. Va. 14, 19, 784 S.E.2d 713, 718 (2016) (quoting, in part, *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 345, 480 S.E.2d 548, 554 (1996)(internal quotations and citations omitted)). We have explained that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code § 53-1-1" Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

---

[8] As discussed *supra* in note 7, before filing its petition for writ of prohibition, Thornhill sought to have this case transferred to the business court. Moore argues that by seeking transfer of the case to business court, Thornhill effectively waived its right to then seek extraordinary relief with the Court. We have previously stated that "[w]hile there is no specific time frame for the filing of a writ of prohibition, extraordinary remedies are, by their very nature, to be considered upon a case-by-case basis." *State ex rel. W. Va. Nat'l Auto. Ins. Co. v. Bedell*, 223 W. Va. 222, 229, 672 S.E.2d 358, 365 (2008). In this regard, we find Moore's argument to be without merit. The subject petition for extraordinary relief was filed less than two weeks after the requested referral to the business court was denied. Further, there is no legal support for Moore's position that a party's request to transfer a case to the business court prevents the party from seeking extraordinary relief from this Court.

5

In the context of venue, we recognized in *State ex rel. Thornhill Group, Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014):

> That the issue of venue may properly be addressed through a writ of prohibition is well-settled. In *State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 464 S.E.2d 763 (1995), we explained our preference for "resolving this issue [venue] in an original action" given the "inadequacy of the relief permitted by appeal." *Id*. at 124, 464 S.E.2d at 766; *accord State ex rel. Huffman v. Stephens*, 206 W.Va. 501, 503, 526 S.E.2d 23, 25 (1999) (recognizing that concerns regarding litigants being placed at unwarranted disadvantage and inadequate appellate relief compel exercise of original jurisdiction in venue matters). In deciding whether to grant a writ of prohibition in cases where the lower court is acting within its jurisdiction but alleged to have exceeded its authority, we rely upon those now axiomatic factors set forth in syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

*Thornhill Group*, 233 W. Va. at 567, 759 S.E.2d at 798.

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Hoover*, 199 W. Va. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4. We now turn to whether a writ of prohibition should issue in this case.

## III. Discussion

The sole issue is which statute controls venue for Moore's lawsuit – the general venue statute or the specific venue statute. Thornhill argues that the general venue statute, W. Va. Code § 56-1-1, is controlling and that the proper venue for this case is in Logan County where Thornhill's principal office is located, its chief officer, Wally Thornhill, resides, and the allegations giving rise to this action arose. *See id*. § 56-1-1(a)(1)-(2) ("(a) Any civil action or other proceeding, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county: (1) Wherein any of the defendants may reside or the cause of action of arose . . . ; (2) If a corporation or other corporate entity is a defendant, wherein its principle office is or wherein its . . . president or other chief officer resides . . . ."). Conversely, Moore argues that the specific venue statute set forth in West Virginia Code § 17A-6A-12(3) provides for its action to be pursued in "the circuit court for the county in which the new motor vehicle dealer is located," *see id*., and that the circuit court correctly found that Mingo County was the proper venue. We agree with Thornhill that the general venue statute controls. *See* § 56-1-1.

The specific venue statute relied upon by Moore is inapplicable to this case for two reasons. *See id*. First, under a clear reading of the statutory provision, the venue

7

is inextricably linked to the notice requirements of the statute. In this regard, West Virginia Code §§ 17A-6A-12(2)-(3), provide, in relevant part:

> (2) Before a manufacturer[9] or distributor[10] enters into a dealer agreement establishing or relocating a new motor vehicle dealer[11] within a relevant market area where the same line-make is represented, the manufacturer or distributor shall give written notice to each new motor vehicle dealer of the same line-make in the relevant market area of its intention to establish an additional dealer or to relocate an existing dealer within that relevant market area.
>
> (3) Within sixty days after receiving the notice provided in subsection (2) of this section, or within sixty days after the end of any appeal procedure provided by the manufacturer or distributor, a new motor vehicle dealer of the same line-make within the affected relevant market area *may bring a declaratory judgment action in the circuit court for the county in which the new motor vehicle dealer is located* to determine whether good cause exists for the establishing or relocating of the proposed new motor vehicle dealer. *Provided*, That a new motor vehicle dealer of the same line-make within the affected relevant market area shall not be permitted to bring such an action if the proposed relocation site would be further from the

---

[9] A "manufacturer" is defined as "any person who manufactures or assembles new motor vehicles; or any distributor, factory branch or factory representative. . . ." W. Va. Code § 17A-6A-3(8).

[10] A "distributor" is defined as "any person, resident or nonresident who, in whole or in part, offers for sale, sells or distributes any new motor vehicle to a new motor vehicle dealer. . . ." *Id*. § 17A-6A-3(3).

[11] A "new motor vehicle dealer" is defined as

> a person who holds a dealer agreement granted by a manufacturer or distributor for the sale of its motor vehicles, who is engaged in the business of purchasing, selling, leasing, exchanging or dealing in new motor vehicles, service of said vehicles, warranty work and sale of parts who has an established place of business in this state and is licensed by the Division of Motor Vehicles.

location of the new motor vehicle dealer of the same line-make than the location from which the dealership is being moved. Once an action has been filed, the manufacturer or distributor may not establish or relocate the proposed new motor vehicle dealer[12] until the circuit court has rendered a decision on the matter . . . . The manufacturer has the burden of proving that good cause exists for establishing or relocating a proposed new motor vehicle dealer.

(Footnotes and emphasis added). The foregoing language is clear and specific: notice "shall" be given by the manufacturer or distributor to each new motor vehicle dealer "of the same line-make in the relevant market area of its intention to establish an additional dealer or to relocate an existing dealer within that relevant market area[.]"[13] *Id*. § 17A-6A-12(2). After such notice is given, the declaratory action provided for in section 17A-6A-12(3) is one filed in connection with the notice requirement and is directed at the manufacturer or distributor, not a different new motor vehicle dealer. *Id*. §§ 17A-6A-12(2)-(3). Indeed, the statute places the burden of proof for the action on the manufacturer

---

[12] A "proposed new motor vehicle dealer" means "a person who has an application pending for a new dealer agreement with a manufacturer or distributor. 'Proposed motor vehicle dealer' does not include a person whose dealer agreement is being renewed or continued." *Id*. § 17A-6A-3(13).

[13] Thornhill also contends that the movement of its dealership does not constitute a "relocation" as discussed in section 17A-6A-12(1). That statute provides that "[a]s used in this section," "relocate" and "relocation" do not include "the relocation of a new motor vehicle dealer within four miles of its established place of business[,]" and "[t]he relocation of a new motor vehicle dealer to a site within the area of sales responsibility assigned to that dealer by the manufacturing branch or distributor may not be within six air miles of another dealer of the same line-make." Even though Thornhill asserts that "it is undisputed that Thornhill's move is within four miles of its prior location making Thornhill an existing motor vehicle dealer and not a 'Relocating Motor Vehicle Dealer'[,]" we need not resolve this specific factual issue because of our determination that venue was not controlled by the statute. *See id*. § 17A-6A-12(3).

9

to show "that good cause exists for establishing or relocating a proposed new motor vehicle dealer." *Id.* § 17A-6A-12(3). In short, section l7A-6A-12(3) simply does not provide venue for any action other than a declaratory action brought by a new motor vehicle dealer against a manufacturer or distributor, after notice has been provided to the new motor vehicle dealer by the manufacturer or distributor. *Id.*; *see Raines Imps., Inc. v. Am. Honda Motor Co.,* 223 W. Va. 303, 311, 674 S.E.2d 9, 17 (2009) ("Absent such statutory notice, Lester Raines Honda did not have standing to bring a statutory declaratory judgment action pursuant to W. Va. Code § 17A-6A-12(3).").

Second, section 17A-6A-12(3) is a part of the statutory scheme established by the Legislature in West Virginia Code §§ 17A-6A-1 to -18, which is specifically intended to prevent "undue control of the independent new motor vehicle dealer by the vehicle manufacturer or distributor." *See id.* § 17-6A-1 (providing that "in order to promote the public welfare and in exercise of its police power, it is necessary to regulate motor vehicle dealers, manufacturers, distributors and representatives of vehicle manufacturers and distributors doing business in this state in order to avoid undue control of the independent new motor vehicle dealer by the vehicle manufacturer or distributor and to ensure that dealers fulfill their obligations under their franchises and provide adequate and sufficient service to consumers generally, and to protect and preserve the investments and properties of the citizens and motor vehicle dealers of this state."). More precisely, West Virginia Code § 17A-6A-2 provides:

> In accord with the settled public policy of this state to protect the rights of its citizens, *each franchise or agreement between a manufacturer or distributor and a dealer or dealership which is located in West Virginia*, or is to be performed in substantial part in West Virginia, shall be construed and governed by the laws of the state of West Virginia, regardless of the state in which it was made or executed and of any provision in the franchise or agreement to the contrary.
>
> *The provisions of this article apply only to any franchises and agreements entered into, continued, modified or renewed subsequent to the effective date of this article*.

*Id.* (emphasis added). Significantly, under the statute both Thornhill and Moore are "new motor vehicle dealer[s]," and neither is a "proposed new vehicle dealer," a "manufacturer" or "distributor" as those terms are defined by the statute. *See* W. Va. Code § 17A-6A-3. Further, there are no franchise agreements or other agreements[14] entered into between Moore and Thornhill in this case.[15]

---

[14] *See id.* § 17-6A-3(1) (defining "Dealer agreement" as "the franchise, agreement or contract in writing between a manufacturer, distributor and a new motor vehicle dealer which purports to establish the legal rights and obligations of the parties to the agreement or contract with regard to the purchase, lease or sale of new motor vehicles, accessories, service and sale of parts for motor vehicles.").

[15] When read in its entirety, the statutory scheme applies specifically and solely to actions between new motor vehicle dealers and distributors or manufacturers. *See* W. Va. Code § 17A-6A-16(1) (providing for an action for damages and equitable relief by "*the new motor vehicle dealer adversely affected by the action*" "*against the manufacturer or distributor*" if either one of those entities "terminates, cancels, fails to renew or discontinues a dealer agreement for other than good cause as defined in this article, or commits any other violation of this article") (emphasis added); *id.* §§ 17A-6A-16(2)-(3) (providing for action for damages by new vehicle dealer against manufacturer or distributor for damages for "*[a] manufacturer or distributor who violates this article . . .*" and for declaratory judgment action by manufacturer, distributor or new motor vehicle dealer for

From the foregoing analysis, it is readily gleaned that section 17A-6A-12(3) does not control venue for the action brought by Moore against Thornhill – one new motor vehicle dealer suing another.[16] Therefore, we conclude that the circuit court erred as a matter of law in applying section 17A-6A-12(3) to the underlying lawsuit to find that venue could lie in Mingo County, West Virginia. This clear error, taken together with the "inadequacy of the relief permitted by appeal," requires that this Court grant the writ of prohibition. *Riffle,* 195 W. Va. at 124, 464 S.E.2d at 766 (also providing that "[i]n recent

"determination of any controversy arising pursuant to this article") (emphasis added); *id*. § 17A-6A-16(5) (providing that "[i]n addition to any county in which venue is proper in accordance with the constitution and laws of this state, *in any cause of action brought by a new motor vehicle dealer against a manufacturer or distributor for any violation of this article or for the determination of any rights created by the dealer's franchise agreement*, venue is proper in the county in which the dealer is engaged in the business of selling the products or services of the manufacturer or distributor.") (emphasis added); *id*. § 17A-6A-17 (providing "[u]pon proper application to the circuit court, *a manufacturer or distributor or new motor vehicle dealer may obtain appropriate injunctive relief against termination, cancellation, nonrenewal or discontinuance of a dealer agreement or any other violation of this article*.") (emphasis added).

[16] We find unavailing Moore's rather convoluted argument that because it seeks injunctive relief under section 17A-6A-17, *see supra* note 16, which may be sought by "a manufacturer or distributor or new motor vehicle dealer" for "any other violation of this article," and because it alleges that Thornhill violated section 17A-6A-12(3), it is entitled to venue under section 17A-6A-12(3) since section 17A-6A-17 fails to mention who may be sued. Such a reading of the statute is not only overly broad, but it also takes the language of section 17A-6A-17 out of context in regard to the remainder of the statutory scheme. *See* Syl. Pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in [p]ari materia to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.").

times in every case that has had a substantial legal issue regarding venue, we have recognized the importance of resolving the issue in an original action."); *see also Thornhill Group*, 233 W. Va. at 567, 759 S.E.2d at 798; *Hoover*, 199 W. Va. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4. Venue for the underlying action lies solely in Logan County, West Virginia.

## IV. Conclusion

For the foregoing reasons, because venue for Moore's action is proper in Logan County under the general venue statute, § 56-1-1, we grant Thornhill's request for relief in prohibition and direct the Circuit Court of Mingo County to transfer venue of the action to Logan County.

Writ granted.