IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

**FILED**

**June 14, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0441

STATE OF WEST VIRGINIA EX REL. 3C LLC,
AND JUSTIN JOURNAY,
Petitioners,

v.

THE HONORABLE ERIC H. O'BRIANT,
JUDGE OF THE CIRCUIT COURT OF LOGAN COUNTY,
AND TRI-STATE WHOLESALE, INC.,
Respondents.

Petition for a Writ of Prohibition

WRIT GRANTED AS MOULDED

Submitted:  April 13, 2022
Filed:  June 14, 2022

Corey L. Palumbo, Esq.
Roger Hanshaw, Esq.
Joshua A. Lanham, Esq.
BOWLES RICE LLP
Charleston, West Virginia
Counsel for Petitioners

Russell D. Jessee, Esq.
John J. Meadows, Esq.
Devon J. Stewart, Esq.
Steptoe & Johnson PLLC
Charleston, West Virginia
Counsel for Respondent
Tri-State Wholesale, Inc.

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE BUNN did not participate in the decision of the Court.

SYLLABUS BY THE COURT

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "'This Court's review of a trial court's decision on a motion to dismiss for improper venue is for abuse of discretion.' Syllabus point 1, *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 624 S.E.2d 815 (2005)." Syllabus Point 1, *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 690 S.E.2d 322 (2009).

3.    "Our review of the applicability and enforceability of a forum-selection clause is *de novo*." Syllabus Point 2, *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 690 S.E.2d 322 (2009).

4.    "Determining whether to dismiss a claim based on a forum-selection clause involves a four-part analysis. The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires classification of the clause as mandatory or permissive, *i.e.,* whether the parties are *required* to bring any dispute to the designated forum or are simply *permitted* to do so. The third query asks whether the claims and parties involved in the suit are subject to the forum-selection clause. If the forum-selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Syllabus Point 4, *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 690 S.E.2d 322 (2009).

5.    "A range of transaction participants, signatories and non-signatories, may benefit from and be subject to a forum[-]selection clause. In order for a non-signatory to benefit from or be subject to a forum[-]selection clause, the non-signatory must be closely related to the dispute such that it becomes foreseeable that the non-signatory may

benefit from or be subject to the forum[-]selection clause." Syllabus Point 8, *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 690 S.E.2d 322 (2009).

6.       A forum-selection clause may be found unreasonable and unjust if (1) the complaining party will for all practical purposes be deprived of a day in court because of the inconvenience or unfairness of the selected forum, (2) the chosen forum may deprive the plaintiff of a remedy, or (3) its enforcement would contravene a strong public policy of the forum state.

7.       In order to rebut the presumption of enforceability of a forum-selection clause on the ground of fraud, the fraud alleged must be specific to the forum-selection clause itself. General allegations of fraud with respect to the inducement of the contract as a whole are insufficient to invalidate its forum-selection clause.

WALKER, Justice:

This case involves a business dispute rooted in a contract between Petitioner 3C LLC, d/b/a 3Chi, a manufacturer of hemp-derived vaping cartridges, and Respondent Tri-State Wholesale, Inc., d/b/a Tri-State Cannabis, its distributor. In October 2020, Tri-State filed a complaint against 3Chi and Petitioner Justin Journay, the sole member of 3Chi, in the Circuit Court of Logan County, West Virginia, even though their contract requires that any lawsuit "arising out of the breach of [their] Agreement" be filed in the Circuit Court of Hamilton County, Indiana. In this original jurisdiction action, we consider whether the circuit court committed clear legal error by denying Petitioners' motion to dismiss the complaint based on the forum-selection clause. Because we conclude that the circuit court incorrectly applied our holding in *Caperton v. A.T. Massey Coal Company*[1] in evaluating the enforceability of the forum-selection clause, we grant Petitioners' request for a writ of prohibition as moulded. We remand the case for the circuit court to determine whether Tri-State can make a "sufficiently strong showing that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."[2]

---

[1] 225 W. Va. 128, 690 S.E.2d 322 (2009).

[2] *Id*. at 133, 690 S.E.2d at 327, syl. pt. 4.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Tri-State and 3Chi entered into an Exclusive Distribution Agreement in April 2020. The Agreement is for a three-year term and provides that Tri-State is the exclusive distributor of 3Chi's "Products," as defined in the Agreement, in West Virginia and Kentucky.[3] These products include Delta 8 hemp-derived vaping cartridges.[4] Tri-State represents that "[b]ecause Delta 8 products are derived from hemp and contain less than 0.3% Delta 9 THC," they may be lawfully sold under federal law.

This business arrangement quickly soured, and in October 2020, Tri-State filed suit against 3Chi and Mr. Journay, 3Chi's sole member, in the Circuit Court of Logan County, West Virginia.[5] 3Chi filed suit against Tri-State in the Circuit Court of Hamilton County, Indiana, in March 2021, adhering to the Agreement's forum-selection clause.[6]

In this West Virginia action, Tri-State claims that it expended considerable time and money to quickly establish an extensive retail network for 3Chi products in West Virginia and Kentucky. It alleges that in August 2020, the United States Drug Enforcement

---

[3] In May 2020, the parties amended the Agreement to enlarge Tri-State's territory to include the States of West Virginia and Kentucky.

[4] Delta 8, as used in the Agreement, refers to the cannabinoid delta-8 tetrahydrocannabinol (THC), which is present in some hemp-derived extracts.

[5] Tri-State filed an amended complaint in November 2020.

[6] *See* note 8, below.

2

Agency (DEA) issued an Interim Final Rule (IFR) that called into question whether it was legal to sell Delta 8 cartridges. Tri-State claims that while the hemp industry attempted to understand the full effects and implications of the IFR, 3Chi posted a notice on its website stating that the DEA had made the sale of the product illegal under the IFR. Tri-State claims that this notice made the sale of the product financially infeasible and that 3Chi was legally obligated under the Agreement to refund Tri-State the value of 3Chi's products that Tri-State had in its inventory, but that 3Chi refused to make the refund unless Tri-State agreed to a non-compete provision. Tri-State maintains that it was not obligated under the Agreement to agree to a non-compete provision in order to obtain a refund. It also claims that 3Chi and Mr. Journay "made the illegality announcement, which they did not believe themselves, in order to prevent Tri-State from being able to distribute Delta 8 products." Tri-State ultimately alleges that 3Chi and Mr. Journay's conduct was a scheme to defraud:

> 3Chi and Mr. Journay's conduct reveals a scheme to defraud by inducing Tri-State to invest heavily in building 3Chi's brand and warehousing 3Chi products, and once the DEA's IFR created industry uncertainty, manipulating that uncertainty—by stating that they considered Delta 8 products to be illegal and then promptly resuming sale of Delta 8 products—in order to appropriate Tri-State's distribution network for themselves.

In its four-count amended complaint, Tri-State identifies the following claims: (1) breach of contract against 3Chi for refusing to abide by the Agreement's refund provision in the event of a change in law; (2) breach of contract against 3Chi for violating the Agreement's exclusivity term; (3) fraud against 3Chi and Mr. Journay for engaging in

3

a scheme to defraud Tri-State by posting a false statement on 3Chi's website which caused Tri-State to lose the benefits of their Agreement; and (4) tortious interference with contracts against 3Chi and Mr. Journay for interfering with the contracts Tri-State maintained with the retailers it used to market the products. Tri-State alleges that "3Chi's fraudulent scheme was effected by Mr. Journay as 3Chi's principal and the sole person controlling the company." It maintains that "Mr. Journay also is liable individually, because Mr. Journay is directly liable for his own tortious conduct and because Mr. Journay is the sole member of 3Chi and, . . . so controls 3Chi, disregarding the limited liability company formalities, that there is an identity of interests between Mr. Journay and 3Chi." Tri-State seeks monetary damages including compensation for costs incurred in building its retail network and promoting 3Chi's products, compensation for lost future profits, attorney fees and costs, and an injunction "requiring 3Chi to immediately cease all sales of its products into West Virginia and Kentucky unless it does so in conformance with the parties' Exclusive Distribution Agreement[.]"

In December 2020, 3Chi and Mr. Journay moved to dismiss Tri-State's case with prejudice, contending that Tri-State failed to comply with the dispute resolution provision of the Agreement, which requires mediation prior to suit[7] and includes a forum-

---

[7] After the motion to dismiss was filed, the parties took their disputes to mediation but were not successful in resolving this matter.

selection clause stating that "[a]ny legal suit, action, or proceeding arising out of the breach of this Agreement . . . shall occur in the Circuit Court of Hamilton County, Indiana."[8]

---

[8] Specifically, the Agreement provided:

> 26.  DISPUTE RESOLUTION
>
> The Parties agree that in the event a dispute may arise concerning any aspect of this Agreement, that said dispute will be first submitted to mediation and that each party waives their right to file any legal action within the federal and state courts of Indiana or any other jurisdiction until mediation is held.  To begin such mediation, any party shall forward, in writing and by certified mail, a request for mediation to the other party.  The parties shall then consult and if a single mediator cannot be agreed upon within 30 days, each party shall appoint a mediation/representative and those two mediators/representatives shall then agree to [a] single and final mediator.  Said mediation shall occur in Hamilton County, Indiana within sixty (60) days of the initial letter requesting mediation unless otherwise agreed upon by the parties and each side shall bear their own costs and fees associated with said mediation.
>
> If the dispute cannot be resolved at mediation, EACH PARTY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREMENT.  Any legal suit, action, or proceeding arising out of the breach of this Agreement or [sic] shall occur in the Circuit Court of Hamilton County, Indiana.  The prevailing party or parties shall be entitled to an award of its reasonable attorney fees and costs through every stage of the proceeding and in obtaining and enforcing any judgment.

In its response to Petitioners' motion to dismiss, Tri-State argued that "[i]t would be unreasonable and unjust to allow 3Chi to strictly enforce the forum[-]selection clause when it has disregarded every other provision of the Exclusive Distribution Agreement." It claimed that Mr. Journay lacked contractual privity to enforce the forum-selection clause and that it was inapplicable to its claims against him. Tri-State also stated that the provision setting Hamilton County, Indiana, as the exclusive venue for lawsuits was invalid for reasons of fraud and overreaching, and that its enforcement would be unreasonable and unjust.

Specifically, Tri-State claimed that Petitioners misrepresented that the venue was selected because 3Chi was operating and planned to move its headquarters there. But Tri-State contended that Petitioners misrepresented 3Chi's location; it attached an affidavit from a private investigator claiming that she could not find that 3Chi or Mr. Journay had property or a physical address in Indiana other than 3Chi's post office box. The private investigator stated that records with the Indiana Secretary of State and Colorado Secretary of State indicate that 3Chi is registered with a principal office location in Strongsville, Ohio. In reply, Petitioners stated that 3Chi utilizes Hamilton County, Indiana, as its principal place of business, and has done so since approximately April of 2020. They also attached an affidavit from Mr. Journay stating that 3Chi moved its manufacturing facility and its principal place of business there.

6

On April 28, 2021, the circuit court conducted a hearing on Petitioners' motion to dismiss; it relied on the pleadings, and other matters of record, rather than conducting an evidentiary hearing. At the conclusion of the hearing, the circuit court denied Petitioners' motion to dismiss. In its May 21, 2021, order, it stated:

> First, with regard to Mr. Journay, an individual, he is not party to this contract at issue in this action. And, the allegations against him sound in tort for fraud and tortious interference with a contract, part of which was to be performed here in Logan County. So, Mr. Journay, not having been a party to the contract, would not be able to require the Plaintiff to bring suit against him individually anywhere else. Nor does the contract create a benefit for Mr. Journay for any claims against him that sound in tort to be the subject to mediation prior to suit. Moreover, it was argued and not disputed that the mediation has now occurred, at least between the companies, and was unsuccessful.

> . . . .

> Second, with regard to the 3C LLC claim that the Complaint should be dismissed as to it, the [c]ourt again, taking the allegations in the Complaint as true, would find that the mediation clause and the restricted venue clause would not be jurisdictional but would be contract provisions. Those contract provisions are presumptively enforceable unless the [c]ourt would deem them to be unreasonable or unjust. The [C]omplaint taken as a whole, would indicate that this Defendant, 3C LLC, has engaged in fraudulent acts, which affect the contract, part of which was to be enforceable here. So, taking the allegations of the Complaint as true, the [c]ourt would find that enforcement of these contract provisions would be unreasonable and unjust as to the Plaintiff.

In May 2021, Petitioners petitioned this Court requesting that we enter a writ of prohibition preventing the circuit court from continuing any further proceedings in this

7

case. They maintain that venue is appropriate in Hamilton County, Indiana, the forum chosen by the parties in the Agreement.[9]

## II. STANDARD OF REVIEW

We consider the following criteria when deciding whether to grant a writ of prohibition where the lower court is acting within its jurisdiction but alleged to have exceeded its powers:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.[10]

---

[9] After the circuit court denied their motion to dismiss, Petitioners filed an Answer and Counterclaim in this action in June 2021.

[10] Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

8

This Court considers a motion to dismiss, based on a forum-selection clause, as a motion to dismiss for improper venue under Rule 12(b)(3) of the West Virginia Rules of Civil Procedure,[11] and we have entertained writs of prohibition in venue disputes. For instance, in *State ex rel. Mylan, Inc. v. Zakaib*,[12] we stated that "a writ of prohibition is an appropriate remedy 'to resolve the issue of where venue for a civil action lies,' because 'the issue of venue [has] the potential of placing a litigant at an unwarranted disadvantage in a pending action and [ ] relief by appeal would be inadequate.'"[13]

In *Caperton*, we held that "[t]his Court's review of a trial court's decision on a motion to dismiss for improper venue is for abuse of discretion[,]"[14] but our normal deference does not apply where the law is misapplied.[15] Because forum-selection clauses are contractual provisions agreed to by private parties, issues relating to their interpretation

---

[11] *Caperton*, 225 W. Va. at 139, 690 S.E.2d at 333 (quoting Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, 12(b)(3)[5] at 376 (2d ed. 2006)).

[12] 227 W. Va. 641, 713 S.E.2d 356 (2011).

[13] *Id*. at 645, 713 S.E.2d at 360 (quoting *State ex rel. Huffman v. Stephens*, 206 W. Va. 501, 503, 526 S.E.2d 23, 25 (1999)); *see also State ex rel. Riffle v. Ranson*, 195 W. Va. 121, 124, 464 S.E.2d 763, 766 (1995) ("In recent times in every case that has had a substantial legal issue regarding venue, we have recognized the importance of resolving the issue in an original action.").

[14] 225 W. Va. at 132, 690 S.E.2d at 323, syl. pt. 1 (quoting *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 624 S.E.2d 815 (2005)).

[15] *Riffle*, 195 W. Va. at 124, 464 S.E.2d at 766.

9

and enforcement are matters of contract law. "Our review of the applicability and enforceability of a forum-selection clause is *de novo*."[16] When determining whether extraordinary relief is warranted in this case, we turn our focus to whether Petitioners meet the third *Hoover* factor—whether the circuit court's order denying their motion to dismiss on the basis of the forum-selection clause is clearly erroneous as a matter of law.[17]

# III. ANALYSIS

Forum-selection clauses have the "salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions."[18] In syllabus point 4 of *Caperton*, this Court adopted the following rule for determining how courts should assess the enforceability of a forum-selection clause:

> Determining whether to dismiss a claim based on a forum-selection clause involves a four-part analysis. The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires classification of the clause as mandatory or permissive, *i.e.,* whether the parties are *required* to bring any dispute to the designated forum or are simply *permitted* to do so. The third query asks whether the claims and parties involved in the suit are subject to the forum-selection clause. If the forum-selection

---

[16] *Caperton*, 225 W. Va. at 133, 690 S.E.2d at 327, syl. pt. 2.

[17] *Hoover*, 199 W. Va. at 14-15, 483 S.E.2d at 14-15, syl. pt. 4, in part.

[18] *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991).

10

clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.[19]

Petitioners contend that the circuit court's ruling is clearly erroneous because the parties' Agreement contains a forum-selection clause that satisfies the above requirements and Tri-State failed to overcome the presumption of its enforceability. They claim that extraordinary relief is appropriate because a post-judgment appeal cannot provide an adequate remedy for the breach of their Agreement requiring litigation elsewhere. Tri-State counters that Petitioners' failure to request and obtain an order containing findings of fact and conclusions of law is fatal to their request to obtain an extraordinary writ on an interlocutory order.[20] Responding to Petitioners' substantive

---

[19] *Caperton*, 225 W. Va. at 133, 690 S.E.2d at 327, syl. pt. 4.

[20] *See* Syl. Pt. 8, *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 829 S.E.2d 35 (2019) ("'A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.' Syllabus Point 6, *State ex rel. Allstate v. Gaughan*, 203 W. Va. 358, 508 S.E.2d 75 (1998).").

11

claims, Tri-State argues that Petitioners fail to show clear legal error or a flagrant abuse of discretion when the circuit court applied the fourth *Caperton* factor and found that enforcement of the forum-selection clause would be unreasonable and unjust.

Although the circuit court's order does not contain findings of fact and conclusions of law, this Court still is able to determine that (1) the forum-selection clause is presumptively enforceable because it "was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute,"[21] and (2) the circuit court failed to properly evaluate the fourth *Caperton* factor.

## A.     *Forum-Selection Clause is Presumptively Enforceable*

Tri-State does not contest that the forum-selection clause was reasonably communicated to it or that it is mandatory, so we proceed to step three of *Caperton* to see if it is presumptively enforceable. "The third query asks whether the claims and parties involved in the suit are subject to the forum-selection clause."[22]  In its brief to this Court, Tri-State makes no argument on this point, but we address it briefly as to Mr. Journay because the circuit court denied Petitioners' motion to dismiss with regard to him, in part, on that basis.

---

[21] *Caperton*, 225 W. Va. at 133, 690 S.E.2d at 327, syl. pt. 4, in part.

[22] *Id.*

12

The circuit court stated that "Mr. Journay, not having been a party to the contract, would not be able to require" Tri-State "to bring suit against him individually anywhere else." But a party being a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum-selection clause. In syllabus point 8 of *Caperton*, we recognized the breadth of forum-selection clauses and held that

> [a] range of transaction participants, signatories and non-signatories, may benefit from and be subject to a forum[-]selection clause. In order for a non-signatory to benefit from or be subject to a forum selection clause, the non-signatory must be closely related to the dispute such that it becomes foreseeable that the non-signatory may benefit from or be subject to the forum[-] selection clause.[23]

Applying this rule to the facts presented here, even though Mr. Journay is not a party to the Agreement, he may still enforce the forum-selection clause because Tri-State's claims against him are nearly identical to its claims against 3Chi and arise out of the same transactions as those claims. In its amended complaint, Tri-State alleges that Mr. Journay "so controls 3Chi, disregarding the limited liability company formalities, that there is an identity of interests between Mr. Journay and 3Chi." And because Mr. Journay is the sole member of 3Chi, the parties to the Agreement could reasonably foresee that the forum-selection clause may benefit and be binding on him.

---

[23] *Id*. at 133, 690 S.E.2d at 327, syl. pt. 8.

Turning to whether the claims are subject to the forum-selection clause, the circuit court stated that the allegations against Mr. Journay "sound in tort for fraud and tortious interference with a contract, part of which was to be performed here in Logan County." But "[w]hether a forum[-]selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract."[24] And when contract-related tort claims involve the same operative facts as a parallel claim for breach of contract—as they do here—the claims should be heard in the forum selected by the parties.[25] When we examine the substance of Tri-State's tort claims, they clearly fall within the scope of the forum-selection clause. [26]

Because the first three *Caperton* factors are met, the forum-selection clause is presumptively enforceable. The pivotal question then is whether Tri-State can satisfy its burden to prevent the circuit court from enforcing it by rebutting the presumption of enforceability.

---

[24] *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).

[25] *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993).

[26] For instance, in *Omron Healthcare, Inc. v. Maclaren Exports Limited*, 28 F.3d 600 (7th Cir. 1994), the court enforced a similar forum-selection clause that covered "all disputes arising out of" a contract when the plaintiff-distributor brought a trademark infringement suit alleging that the defendant-manufacturer continued to sell merchandise bearing the plaintiff's trademark after the distribution agreement between the parties had terminated. *Id*. at 601-604. The *Omron* court reasoned that "all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement." *Id*. at 603.

## B. *Rebutting the Presumption of Enforceability*

Under *Caperton's* fourth factor, Tri-State can overcome the presumption that the forum-selection clause is enforceable "by making a sufficiently strong showing that enforcement would be unreasonable and unjust, *or* that the clause was invalid for such reasons as fraud or overreaching."[27] The use of the disjunctive "or" suggests that the resisting party can overcome the presumption of enforceability in two distinct ways.[28] In *Caperton*, we relied on the following four-part test from the United States Court of Appeals for the Fourth Circuit:

> Choice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the

---

[27] *Caperton*, 225 W. Va. at 133, 690 S.E.2d at 327, syl. pt. 4, in part (emphasis added). In *Caperton*, the plaintiffs did not argue that enforcement of the forum-selection clause of the contract, requiring that the case be litigated in Virginia, was unreasonable or unjust at the time of the defendants' motion to dismiss, or that the clause was invalid for such reasons as fraud or overreaching. *Id.* at 155, 690 S.E.2d at 349. Rather, they argued, in part, that it was "unjust to apply the forum-selection clause to deprive them of the large jury verdict awarded below." *Id.* So, it was unnecessary for this Court to discuss at length how a party resisting a forum-selection clause can overcome the presumption of its enforceability.

[28] *See Brickstreet Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 240 W. Va. 414, 423-24, 813 S.E.2d 67, 76-77 (2018) (stating word "or" ordinarily connotes an alternative between the two clauses it connects).

plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.[29]

Funneling these factors into our *Caperton* analysis, we see that two, three, and four relate to whether enforcement of the forum-selection clause would be unreasonable and unjust. And the first relates to whether the forum-selection clause is invalid for reasons such as fraud or overreaching. In this case, the circuit court concluded that because "[t]he complaint taken as a whole, would indicate that [3Chi] has engaged in fraudulent acts, which affect the contract, . . . enforcement of these contract provisions would be unreasonable and unjust[.]" So, the circuit court viewed the general allegations of fraud as indicative of the unreasonableness or unjustness of enforcing the forum-selection clause, not considering the "or" in syllabus point 4 of *Caperton*. The circuit court conflated the two ways that a resisting party can overcome the presumption of enforceability, and so failed to properly apply either.

A court may decline to enforce a forum-selection clause when the resisting party makes "a sufficiently strong showing that enforcement would be unreasonable and unjust[.]"[30] To that end, we hold that a forum-selection clause may be found unreasonable

---

[29] *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (quotation marks omitted). In *Caperton*, we also relied on *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972), where the United States Supreme Court concluded that, for purposes of federal law, forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."

[30] *Caperton*, 225 W. Va. at 133, 690 S.E.2d at 327, syl. pt. 4, in part.

16

and unjust if (1) the complaining party will for all practical purposes be deprived of a day in court because of the inconvenience or unfairness of the selected forum, (2) the chosen forum may deprive the plaintiff of a remedy, or (3) its enforcement would contravene a strong public policy of the forum state.[31] When analyzing this type of claim "courts focus on whether the burdens claimed by the resisting party were foreseeable at the time the resisting party ratified the agreement."[32] While most unreasonableness claims focus on the high expense of travel associated with litigating in the selected forum, "[o]nly cases with extreme facts seem to necessitate the invalidation of forum[-]selection clauses on grounds of . . . inconvenience."[33] While this issue does not appear to be the focus of Tri-State's argument, the circuit court should address any claim that enforcement of the forum-selection clause here would be unreasonable or unjust on remand.

A court may also decline to enforce a forum-selection clause when the resisting party makes "a sufficiently strong showing that . . . *the clause* was invalid for such reasons as fraud or overreaching."[34] The fact that Tri-State alleges that this entire

---

[31] *Id*. at 154, 690 S.E.2d at 348 (quoting *Belfiore v. Summit Fed. Credit Union*, 452 F. Supp. 2d 629, 631 (D. Md. 2006)); *see also M/S Bremen*, 407 U.S. at 15.

[32] J. Zak Ritchie, *A Tie That Binds: Forum Selection Clause Enforceability in West Virginia*, 113 W. Va. L. Rev. 95, 126-27 (2010).

[33] *Id*.

[34] *Caperton*, 225 W. Va. at 133, 690 S.E.2d at 327, syl. pt. 4, in part (emphasis added).

17

Agreement was procured as the result of fraud on the part of Petitioners is inapposite to the determination of whether the forum-selection clause is enforceable. As explained in another jurisdiction, "every other court to have addressed this issue has agreed that, to render a forum[-]selection clause unenforceable, the party seeking to avoid the clause must show that the clause itself was procured by fraud."[35] This inquiry must precede any analysis of the merits of the contract's validity. The Supreme Court of Alabama explained the logic behind considering the validity of the forum-selection clause before analyzing the validity of the contract as a whole:

> By requiring the plaintiff specifically to allege that the choice [of venue] clause itself was included in the contract due to fraud in order to succeed in a claim that the choice is unenforceable, courts may ensure that more general claims of fraud will be litigated in the chosen forum, in accordance with the contractual expectations of the parties.[36]

---

[35] *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1162 (Colo. App. 2006); *see also In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) ("We have held that fraudulent inducement to sign an agreement containing a dispute resolution agreement such as an arbitration clause or forum-selection clause will not bar enforcement of the clause unless the specific clause was the product of fraud or coercion."); *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804, 807 (Va. 1990) ("According to the modern view, which we now embrace, contractual provisions limiting the place or court where potential actions between the parties may be brought are prima facie valid and should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud[.]").

[36] *Ex parte PT Sols. Holdings, LLC*, 225 So. 3d 37, 45 (Ala. 2016) (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998)).

18

If a forum-selection clause were to be rejected simply based on a general claim of fraud in the inducement of the contract, then forum-selection clauses would not only be rendered meaningless, but their benefits would be lost. "Predictability would be lost because the parties would not be able to know the locus of litigation in advance (and perhaps retain counsel accordingly). Efficiency would be lost because it would be necessary to litigate the merits in order to determine the locus of litigation."[37]

We hold that in order to rebut the presumption of enforceability of a forum-selection clause on the ground of fraud, the fraud alleged must be specific to the forum-selection clause itself. General allegations of fraud with respect to the inducement of the contract as a whole are insufficient to invalidate its forum-selection clause.

As discussed above, in its response to Petitioners' motion to dismiss, Tri-State argued that the forum-selection clause setting Hamilton County, Indiana, as the exclusive venue for lawsuits was invalid for reasons of fraud, in part, because Petitioners misrepresented that 3Chi's headquarters and operations would be in that area. Petitioners denied that they made any misrepresentation and attached an affidavit from Mr. Journay stating that 3Chi moved its facility to Hamilton County, Indiana. The circuit court should consider this evidence and arguments when ultimately determining whether the forum-selection clause is enforceable under the standards set forth in this opinion. The circuit

---

[37] *Karon v. Elliott Aviation*, 937 N.W.2d 334, 346 (Iowa 2020).

19

court may, in its discretion, hold a pretrial evidentiary hearing to resolve Petitioners' motion to dismiss.[38]

## IV. CONCLUSION

For the reasons set out above, we find that the circuit court committed clear legal error when applying the *Caperton* factors. So, we grant Petitioners' request for a writ of prohibition as moulded. We remand the case for the circuit court to determine whether Tri-State can rebut the presumption of enforceability of the Agreement's forum-selection clause.

Writ granted as moulded.

---

[38] *See generally Bowers v. Wurzburg*, 202 W. Va. 43, 49, 501 S.E.2d 479, 485 (1998) ("When a defendant files a motion to dismiss for lack of personal jurisdiction under *W. Va. R. Civ. P.* 12(b)(2), the circuit court *may* rule on the motion upon the pleadings, affidavits and other documentary evidence *or* the court *may* permit discovery to aid in its decision[;]" it may also conduct "a pretrial evidentiary hearing on the motion[.]"); *see also Ecocards v. Tekstir, Inc.*, 459 P.3d 1111, 1116 (Wyo. 2020) ("If there are disputed issues of fact regarding venue, the district court may, in its discretion, hold an evidentiary hearing to resolve the Rule 12(b)(3) motion.").